IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:22-CR-112** |
| vs. | |
| TESLUACH K. GATKUOTH, | **MEMORANDUM AND ORDER ON OBJECTIONS TO FINDINGS AND RECOMMENDATION ON MOTION TO SUPPRESS** |
| Defendant. | |

The Government has charged the Defendant, Tesluach K. Gatkuoth, with one count of knowingly possessing a firearm after having been previously convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Filing 1 at 1. On November 11, 2022, Gatkuoth filed a Motion to Suppress in which he sought to exclude evidence found during the warrantless search of a home in Omaha, Nebraska. Filing 38 at 1. Although this Motion was initially withdrawn, counsel for the Defendant later moved for leave to reopen the matter. *See* Filing 61 at 1–2. That Motion was granted and United States Magistrate Judge Susan M. Bazis held an evidentiary hearing. Filing 62 (Text Order); Filing 85 at 3. On August 14, 2023, Judge Bazis issued her Findings and Recommendation on the matter and recommended that Gatkuoth's Motion to Suppress be denied. Filing 87 at 1.  This matter is now before the Court on Gatkuoth's objection to Judge Bazis's Findings and Recommendation. Filing 88. After reviewing the matter, the Court overrules Gatkuoth's objection, adopts Judge Bazis's Findings and Recommendation in its entirety, and denies Gatkuoth's Motion to Suppress.

## I.   BACKGROUND

Judge Bazis's Findings and Recommendation discusses the facts pertinent to the Defendant's Motion in greater detail. *See generally* Filing 87 at 1–7. The following background information provides context for the Court's ruling on the Defendant's Statement of Objections.[1]

### A.  Defendant's Arrest on April 8, 2022

On April 8, 2022, Omaha Police Officers Jordan Vander Zwaag and Adam Barcal were on patrol in their marked cruiser near the area of 26th and Patrick Avenue in Omaha, Nebraska. Filing 85 at 54–55; 106–107. After observing a silver Lexus fail to complete a stop at a stop sign, the officers initiated a traffic stop. Filing 85 at 54. The Lexus did not immediately stop and the officers then proceeded to turn on their sirens. Filing 85 at 55. The officers witnessed the Lexus fail to come to a complete stop at another stop sign before then coming to a complete stop in the middle of the lane near the intersection of North 26th and Blondo Streets. Filing 85 at 56–57, 71, 106–07; Filing 83 (Exhibit 2; Exhibit 5). Upon stopping, the driver of the vehicle immediately exited and began running toward a house. Filing 83 (Exhibit 2; Exhibit 4). Officer Vander Zwaag pursued the fleeing driver (later identified as the Defendant) while Officer Barcal remained focused on the passenger in the vehicle until he was able to retrieve the vehicle's keys.[2] Filing 83 (Exhibit 2).

The Defendant ran through the front door of the house located at 2603 Blondo Street, and in so doing, ran right past an individual (later identified as Riek Kuany) who was standing on the front porch at the time. Filing 83 (Exhibit 4); Filing 85 at 15–16. Officer Vander Zwaag also ran past Kuany as he pursued the Defendant into the house. Filing 83 (Exhibit 4). Officer Vander

---

[1] The Court notes that apart from contesting Judge Bazis's conclusion as to the credibility of a witness, the Defendant does not dispute her general recitation of the facts as reflected on pages 1–7 of her Findings and Recommendation. *See* Filing 87 at 1-7; Filing 88 at 1–2; Filing 89 at 1–2.

[2] At some unknown point in time after Officer Barcal went to go assist Officer Vander Zwaag, the passenger in the vehicle left the scene while the vehicle remained behind. *See* Filing 83 (Exhibit 2).

Zwaag later testified that as the Defendant was running, he observed that the Defendant was holding his waistband with one of his hands. Filing 85 at 57. This caused Officer Vander Zwaag concern that the Defendant had a firearm because, in his experience, when individuals run with their hands in their waistband, this suggests the individual is carrying a firearm or other large object. Filing 85 at 58. Once the Defendant entered the house he immediately ran downstairs, sheltered in a basement room, and closed the door. Filing 83 (Exhibit 4). Officer Vander Zwaag drew his firearm and directed the Defendant to come out of the room. Filing 83 (Exhibit 4). The Defendant briefly cracked open the door and peered through the doorway but closed it again. Filing 83 (Exhibit 4). The Defendant eventually complied with Officer Vander Zwaag's order to exit the room and laid down on the floor of the basement hallway. Filing 83 (Exhibit 4). Officer Vander Zwaag later testified that while this was occurring, he detected a child's voice coming from the bedroom where the Defendant had been hiding. Filing 85 at 62-63; *see also* Filing 83 (Exhibit 4).

The Defendant initially struggled as Officers Vander Zwaag and Barcal attempted to handcuff him, but they were eventually able to restrain the Defendant and secure him in handcuffs. Filing 85 at 63; Filing 83 (Exhibit 2). Additional officers arrived on scene and the Defendant was placed in the back of a police cruiser. Filing 83 (Exhibit 2); Filing 85 at 64. While the Defendant was taken into custody, other officers performed a safety sweep of the area in the basement. *See* Filing 83 (Exhibit 2). Officer Barcal's body camera footage captured a boy exiting the bedroom where the Defendant had been. Filing 83 (Exhibit 2). The boy told one of the officers that the Defendant had put something under the bed in that room. Filing 83 (Exhibit 2). Ultimately, a firearm was found in the hamper of the bedroom where the Defendant had been. Filing 83 (Exhibit 2).

3

### B.  Riek Kuany's Testimony at the Suppression Hearing

The Defendant moved to suppress the search of the room, arguing that law enforcement violated his Fourth Amendment rights when they conducted a warrantless search after he was in custody. *See generally* Filing 38. During the suppression hearing, the Defense called Riek Kuany as a witness in support of its position that the Defendant has standing to challenge the search based on his claimed status as an "overnight guest" at 2603 Blondo Street. Filing 85 at 14. Kuany acknowledged at the suppression hearing that he had previously been convicted of making a false report to law enforcement in 2019. Filing 85 at 25. Kuany also admitted that he had been previously convicted of robbery (a felony) within the past 10 years. Filing 85 at 25.

Kuany testified that he had known the Defendant for about 10 or 11 years, that he had grown up with the Defendant, and that the Defendant was his "friend." Filing 85 at 15. Kuany explained that on the day the Defendant was arrested, Kuany was at his mother's house—2603 Blondo Street—the same house that Gatkuoth ran inside. Filing 85 at 16-17. Kuany explained that he lived at this address with his mother's three other children. Filing 85 at 15, 20. Kuany also confirmed that he was the individual standing on the porch at the time the Defendant ran into the house (as reflected on Officer Vander Zwaag's body camera). Filing 85 at 16; Filing 83 (Exhibit 4). Kuany testified that he was not surprised to see the Defendant at his house because the Defendant was "spending the night" at the house as he had done before. Filing 85 at 16. However, when Kuany was asked at the suppression hearing whether he told "police that he was spending the night at [his] house[,]" Kuany admitted that he did not because he "was afraid [he] was going to get in trouble too." Filing 85 at 16.

On cross-examination, Kuany admitted that the Defendant did not have keys to the house. Filing 85 at 22. When Kuany was asked whether the Defendant was the only individual who was

supposed to be spending the night at his house or whether the passenger in Defendant's vehicle was also going to be spending the night as well, Kuany responded that he did not "know anything about the passenger." Filing 85 at 22-23. Despite this, Kuany testified that had the Defendant not been pulled over, he anticipated the Defendant "would have parked his vehicle, come inside" and "been a guest for the rest of the evening[.]" Filing 85 at 22. Kuany also testified that the Defendant previously spent the night on April 7, 2022, left sometime in the morning on April 8, 2022, and was told that "he could just come back later on in the evening or whatever time he gets ready doing whatever he is doing." Filing 85 at 22-24. Kuany said the next time he saw the Defendant that day was when he was getting out of the Lexus and running toward the house. Filing 85 at 24-25.

Kuany acknowledged at the hearing that he lied to the police officers regarding whether he knew the Defendant when they spoke with him on April 8, 2022. Filing 85 at 27; *see also* Filing 83 (Exhibit 6). However, Kuany attempted to distinguish what he told law enforcement on April 8, 2022, and his testimony at the suppression hearing because he did not "raise [his] right hand" when he spoke with law enforcement on April 8, 2022, and no one asked him if he was telling the truth at that time. Filing 85 at 17. In her written Findings and Recommendation, Judge Bazis concluded that Kuany's testimony was not credible. Filing 87 at 10.

## II.   ANALYSIS

### A.  Standard of Review

Under 28 U.S.C. § 636(b)(1), different standards of review apply when a party objects to a pretrial decision or a proposed findings of fact and recommendations by a magistrate judge. *See* 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's proposed findings and recommendations, "[a] judge of the court shall make a de novo determination of those portions . . . to which objection is made." *Id.*; *accord Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) ("When a party timely objects to a magistrate judge's report and recommendation, the

district court is required to make a de novo review of the record related to the objections . . . ."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If desired, a reviewing district court judge may "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the entire matter. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable."); *United States v. Backer*, 362 F.3d 504, 508 (8th Cir. 2004) ("'De novo' is a Latin term literally meaning 'as new.' Our review is independent and not premised on the district court's appropriate use of its discretion. We are concerned only with the proper application of the law . . . ."). When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the suppression hearing and has reviewed the exhibits admitted at the hearing.

### B. Gatkuoth's Statement of Objections

#### 1. Overview

Gatkuoth filed a "Statement of Objections" to Judge Bazis's Findings and Recommendation on August 28, 2023. Filing 88 at 1. He also filed a brief in support of his

"Statement of Objections" that same day. Filing 89. In these filings—which total a combined 4 pages—the Defendant raises only one issue for this Court to resolve with regard Judge Bazis's Findings and Recommendation. *See generally* Filing 88; Filing 89. The Defendant argues that Judge Bazis "was incorrect in [her] Findings that the witness, Riek Kuany, who testified that the Defendant was an overnight guest at [the] private residence was not credible." Filing 88 at 1. Apart from this matter, the Defendant does not raise any other specific or particularized objection to Judge Bazis's Findings and Recommendation. *See generally* Filing 88; Filing 89. The Government submitted a responsive filing the next day, August 29, 2023. Filing 90. The Government submits that "[b]ecause [Judge Bazis] correctly found that the defendant had not presented any credible evidence that he was a houseguest and therefore did not have a legitimate privacy expectation to challenge the house's search, [Judge Bazis's] Findings and Recommendations should be upheld." Filing 90 at 2. The Court agrees with the Government that Judge Bazis correctly concluded the Defendant lacks standing to contest the search in question. *See* Filing 87 at 7.

### 2. Applicable Fourth Amendment Standards

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, "Fourth Amendment rights are personal rights that may not be asserted vicariously." *United States v. Russell*, 847 F.3d 616, 618 (8th Cir. 2017) (citation omitted). Thus, "[a]n individual asserting Fourth Amendment rights must demonstrate that he personally has an expectation of privacy in the place searched and that his expectation is reasonable." *United States v. Sierra-Serrano*, 11 F.4th 931, 933 (8th Cir. 2021) (citation omitted). A defendant who moves "to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search." *Id.* (citation omitted). The Supreme Court has recognized that

"status as an overnight guest is alone enough to show that [a] defendant [has] an expectation of privacy in the home that society is prepared to recognize as reasonable." *United States v. Wiest*, 596 F.3d 906, 909 (8th Cir. 2010) (quoting *Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990)).

### 3. Discussion

Judge Bazis concluded that the Defendant failed to meet his burden to establish that he had standing to contest the search of the home. After conducting a *de novo* review of the record, which included reading the transcript of the suppression hearing, reviewing the exhibits that were received into evidence, and considering the parties submissions on the matter, the Court agrees with Judge Bazis's conclusion. The Defense did not offer any exhibits at the hearing and called only one witness relevant to the issue of standing—Riek Kuany.[3] Filing 83 at 1; Filing 85 at 2, 14. Judge Bazis had the opportunity to assess Mr. Kuany's credibility by personally viewing his behavior and mannerisms as he testified before her in person. *See* Filing 85 at 4, 14; Filing 87 at 5; Filing 87 at 9 (Judge Bazis noting in her Findings and Recommendation that, "[w]hile listening and observing his testimony, it appeared to the Court that Mr. Kuany was trying to formulate an acceptable answer on the spot"). However, she had more than just that. Judge Bazis also had other evidence before her relevant to this credibility determination. *See e.g.*, Filing 83 (Exhibit 7). On cross-examination, Mr. Kuany admitted that in 2019 he was convicted of making a false report to law enforcement. Filing 85 at 25. The National Crime Information Center (NCIC) printout that was introduced during the hearing confirms this. Filing 83 (Exhibit 7). Mr. Kuany also admitted that he lied to the officers on the day of the incident when they asked him whether he knew the

---

[3] Towards the conclusion of the hearing, the Defense called Officer Adam Barcal with the Omaha Police Department as a witness. Filing 85 at 2, 104–105. Defense counsel's questioning of Officer Barcal did not relate to whether the Defendant was an overnight guest at the house or other matters directly pertaining to standing. *See* Filing 85 at 104–114. On cross-examination, counsel for the Government asked Officer Barcal whether he had "any reason to believe that that individual later identified as the defendant had any association with that home" at the time he saw him run inside. Filing 85 at 115. Officer Barcal responded, "No." Filing 85 at 115.

Defendant. Filing 85 at 26. Body-camera footage confirms this as well. *See* Filing 83 (Exhibit 6). Indeed, Mr. Kuany admitted to falsely telling the officers that he did not know the Defendant on multiple occasions. Filing 85 at 27; *see also* Filing 83 (Exhibit 6).

The Eighth Circuit has repeatedly reiterated that "[a] credibility finding made by a magistrate judge after a hearing on the merits of a motion to suppress is virtually unassailable on appeal." *United States v. Mitchell*, 55 F.4th 620, 622 (8th Cir. 2022) (internal quotations omitted) (citing *United States v. Shafer*, 608 F.3d 1056, 1065 (8th Cir. 2010) (in turn quoting *United States v. Starr*, 533 F.3d 985, 995 (8th Cir. 2008)); *see also United States v. Stewart*, 32 F.4th 691, 694 (8th Cir. 2022) ("Credibility assessments are the province of the trial court, and a credibility determination made by a district court after a hearing on the merits of a motion to suppress is virtually unassailable on appeal") (cleaned up)). This Court's review of the matter is, of course, *de novo*. Nevertheless, the Defendant has pointed to nothing which convinces this Court on *de novo* review that Judge Bazis's credibility assessment was incorrect.

The Defendant tells the Court it will see from a review of the transcript "that Mr. Kuany was honest about his past interactions with law enforcement." Filing 89 at 1. That is not convincing because by being "honest about his past interactions with law enforcement" at the hearing, he was also necessarily admitting to having a prior conviction for "not" being honest with law enforcement in the past. *See* Filing 85 at 25; Filing 83 (Exhibit 7). The Defendant also argues, "[t]he difference between what Mr. Kuany disclosed to the Court at the Motion to Suppress hearing and his testimony that day, is that he had never previously sworn under oath." Filing 89 at 1. The Court is not persuaded that this makes an appreciable difference under the circumstances. It was the Defendant's burden to establish that he had standing to challenge the search of the residence based on his claim that he was an overnight guest with a corresponding privacy interest in the areas

that were searched. *See Sierra-Serrano*, 11 F.4th at 933; *see also United States v. Bettis*, 946 F.3d 1024, 1027 (8th Cir. 2020) ("Fourth Amendment standing is 'useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search,' but it does not implicate Article III jurisdiction" (quoting *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018)). The testimony provided did not meet that burden. Filing 85 at 25; Filing 83 (Exhibit 7).

Not only that, but Mr. Kuany's testimony during the hearing was less than convincing. For example, Mr. Kuany said that he and the Defendant had "been friends for 10-plus years" and the Defendant had spent the night at his house many times. Filing 85 at 15, 24, 32–33. However, Mr. Kuany also admitted during his testimony that he was a member of the "Trip Set gang" and when he was asked whether the Defendant was "also a Trip Set member," Mr. Kuany responded, "I don't know." Filing 85 at 32–33. The Court finds this contradictory testimony to be incredible and serves as yet another reason why Judge Bazis was correct to find that Mr. Kuany was not a credible witness. Upon *de novo* review, the Court agrees with Judge Bazis that Mr. Kuany's testimony was not sufficiently credible to establish that the Defendant had standing to challenge the search based on his claim that he was an overnight guest. The Court therefore adopts Judge Bazis's Findings and Recommendation, Filing 87, in its entirety, overrules the Defendant's Statement of Objections, Filing 88, and denies the Defendant's Motion to Suppress, Filing 38.

### III.   CONCLUSION

The Court agrees with the findings and conclusions reached by Judge Bazis. Accordingly, IT IS ORDERED:

1. Gatkuoth's Statement of Objections, Filing 88, is overruled;

2. Judge Bazis's Findings and Recommendation, Filing 87, is adopted in its entirety; and

3.  Gatkuoth's Motion to Suppress, Filing 38, is denied.

Dated this 19th day of September, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge